IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHARLES F. ABBOTT<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK J. MULLIGAN, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:06-CV-593 |

## BACKGROUND

The present case involves a dispute between two attorneys–Charles Abbott and Patrick Mulligan. In 2001, Mr. Abbott and Mr. Mulligan agreed to jointly pursue plaintiffs' cases involving the diet-drug known as Fen-Phen. Despite its popularity during the mid-1990's, Fen-Phen was withdrawn from the market in 1997 after some users experienced heart-valve abnormalities and pulmonary hypertension. Massive amounts of litigation have ensued since that time. According to one account, the drug's maker, pharmaceutical giant Wyeth Corp., has paid out some $13 billion in claims related to its Fen-Phen products.

On April 30, 2002, Mr. Abbott, of Utah, and Mr. Mulligan, of Texas, executed a written Attorney Association Agreement. By that agreement and consistent with prior negotiations, Mr. Abbott agreed to place advertisements in California and Utah seeking individuals potentially harmed by Fen-Phen use, to screen potential clients for compensable injuries, and then to refer qualifying claimants to Mr. Mulligan. In exchange for these actions, Mr. Mulligan agreed to pay

for advertising and screening costs related to those clients.  He also agreed to pay Mr. Abbott a portion of any recovered attorneys' fees following recovery by a client.  If Mr. Mulligan paid for the advertising and testing costs related to a client that was referred by Mr. Abbott, Mr. Abbott was entitled to 25% of the recovered attorneys' fees.  But if Mr. Abbott had paid for the advertising and testing costs, he was entitled to one-third of the recovered fee.  A second agreement between Mr. Abbott and Mr. Mulligan provided that Mr. Abbott would receive a consultation fee for cases referred to Mr. Mulligan by another Utah law firm.  The parties chose to incorporate a mandatory arbitration provision in the Attorney Association Agreement.

Despite engaging in negotiations and agreeing on a referral arrangement, the relationship between Mr. Abbott and Mr. Mulligan became contentious not long after it began.  As early as the Fall of 2001, Mr. Abbott began retaining clients for himself rather than referring them to Mr. Mulligan.  He also referred some cases to another attorney, George Fleming.  Mr. Mulligan, on the other hand, refused to pay recovered attorneys' fees to Mr. Abbott despite his agreement otherwise.

The contention between these two attorneys' resulted in litigation.  On July 18, 2006, Mr. Abbott filed a complaint against Mr. Mulligan in this Court, complaining that Mr. Mulligan had breached their agreements by failing to pay him his portion of recovered attorneys' fees.  Although Mr. Mulligan admitted he owed Mr. Abbott for recovered fees, he disputed the amount claimed by Mr. Abbott.  Mr. Mulligan then counterclaimed against Mr. Abbott alleging that the Attorney Association Agreement was exclusive and that Mr. Abbott had violated the Agreement by retaining clients for himself and referring clients to Mr. Fleming.  Mr. Abbott claimed in response that the Agreement was not exclusive.

Initially, Mr. Abbott pursued his claims against Mr. Mulligan in this Court.  But after nearly one year of litigation, Mr. Abbott decided he no longer wanted to pursue his claims

related to the Association Agreement in this forum. Instead, Mr. Abbott asked the Court to compel arbitration pursuant to the arbitration clause embodied within the Association Agreement. The Court granted this request on August 8, 2007. The parties then tried the issues surrounding the Association Agreement to a panel of three AAA arbitrators.

The arbitration panel conducted evidentiary hearings in Salt Lake City, Utah, between June 23 and June 27, 2008. The panel considered documentary evidence, oral testimony, and oral and written argument on issues ranging from liability under the Association Agreement to calculating damages under Utah law.

On October 1, 2008, a majority of the three-person panel issued a written opinion finding largely in favor of Mr. Mulligan. According to the majority, at the time Mr. Mulligan and Mr. Abbott entered into their referral arrangement, they intended it to be exclusive. On that basis, the majority awarded Mr. Mulligan nearly $7 million in damages. Because the panel determined that Mr. Mulligan had improperly withheld payment to Mr. Abbott of slightly over $1 million in recovered attorneys' fees and expenses, however, the majority found that Mr. Abbott was liable to Mr. Mulligan for $5,686,465.04 in damages. The majority made this calculation having heard evidence by the parties concerning the proper calculation of lost profits under Utah law. Mr. Abbott and his experts argued that damages for lost profits must be discounted by expenses and costs that would have been incurred had the other party performed his or her obligations under the contract. According to Mr. Mulligan, the law did not require the parties to deduct potential expenses and costs in this case. The majority stated in its opinion that it "decline[d] to compel either party to reduce the amount claimed [in damages] by the amount of expenses that may have been saved." Def.'s Mem. in Supp. of Mot. to Affirm Arbitration Award and to Sever and Enter Final J. on the Award Ex. C. at 12. The dissenting arbitrator disagreed with the majority's analysis, calling the calculation of damages an "insurmountable problem." *Id.* at 24.

Following the majority's award, Mr. Mulligan sought discovery related to satisfying the arbitration award.

Despite being the person who sought resolution through arbitration, on January 16, 2009, Mr. Abbott filed a motion in this Court seeking an extraordinary remedy: complete vacatur of the majority's decision. He argues that the majority exceeded its powers by "(1) manifestly disregarding the applicable Utah law that requires a party to prove its lost net profits—not just lost gross profits—as damages, and/or (2) entering an award that was completely irrational." Pl.'s Mem. in Supp. of Mot. to Vacate Arbitration Award 15. According to Mr. Abbott, the majority panel's award is illegally inflated because Mr. Mulligan would have incurred substantial testing, legal, and administrative costs in order to pursue the cases retained by Mr. Abbott or otherwise referred.

Mr. Mulligan also seeks action from the Court. He has asked the Court to confirm the Award pursuant to 9 U.S.C. § 9, enter final judgment against Mr. Abbott, and sever Mr. Abbott's pending federal claims[1] pursuant to the Federal Rules of Civil Procedure. Should the Court grant Mr. Mulligan's motion to confirm the award, Mr. Abbott seeks a protective order to prevent Mr. Mulligan from pursuing discovery regarding satisfaction of the award pending resolution of the remaining claims before the Court. For the reasons stated below, the Court DENIES Mr. Abbott's Motion to Vacate, GRANTS, in part, Mr. Mulligan's Motion to Confirm Arbitration Award, and GRANTS Mr. Abbott's Motion for Protective Order.

---

[1] Mr. Abbott's remaining claim (or claims) relates to Mr. Mulligan's alleged breach of the consultation agreement.

**DISCUSSION**

I.      Mr. Abbott's Motion to Vacate Arbitration Award

The Federal Arbitration Act ("FAA") instituted a national policy favoring efficient resolution of disputes through voluntary arbitration agreements with minimal judicial intervention. *See Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 128 S.Ct. 1396, 1405 (2008). When reviewing arbitration awards made pursuant to the FAA, courts "must give extreme deference to the determination of the arbitration panel for the standard of review of arbitral awards is among the narrowest known to law." *Sheldon v. Vermonty*, 269 F.3d 1202, 1205 (10th Cir. 2001) (quoting *Brown v. Coleman Co.*, 220 F.3d 1180, 1182 (10th Cir. 2000) (internal quotations omitted)). Although the FAA provides limited avenues for court-vacatur of arbitration awards, mere erroneous factual findings, or misinterpretations or misapplications of the law will not, without more, justify reversal of an award. *Id.* (quoting *Denver & Rio Grande W. R.R. v. Union Pac. R.R.*, 119 F.3d 847, 849 (10th Cir. 1997)).

Section 10 of the FAA governs court-vacatur of awards made pursuant to the Act. It states that a district court may vacate an award

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where arbitrators were guilty of misconduct . . . ; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10(a).

In the past, some courts have also indicated that there may exist grounds for vacatur beyond those set forth in the FAA. *See Dominion Video Satellite, Inc. v. Echostar Satellite, L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005). One such ground, referred to as manifest disregard of the law, provides that in some cases a court may vacate an arbitration panel's award where the panel has issued an opinion that significantly misapprehends or misapplies the

applicable law.  *See ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995).  In his initial briefing, Mr. Abbott argues that the Tenth Circuit recognizes this judicially created doctrine and that it is applicable here.  His counsel seemed to distance himself from such an argument during oral argument, but to the extent Mr. Abbott continues to assert that manifest disregard for the law provides relief beyond § 10 of the FAA, his argument is without merit.  The United States Supreme Court recently settled this issue.

In *Hall Street Assoc., L.L.C. v. Mattel, Inc.,* the Supreme Court addressed whether the § 10 grounds for vacatur could be expanded by either parties or the judiciary.  128 S.Ct. at 1404. According to the Court, the FAA substantiated "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway."  *Id.* at 1405.  Therefore, the Court held that the FAA does not permit parties, or the judiciary, to expand beyond the grounds set forth in § 10 judicial review of, and authority to vacate, awards made pursuant to the FAA.  *See id.* at 1405-06.  "Any other reading [would] open the door to the full-bore legal and evidentiary appeals that can 'render informal arbitration merely a prelude to a more cumbersome and time consuming judicial review process,' and bring arbitration theory to grief in post-arbitration process."  *Id.* at 1405 (quoting *Kyocera Corp. v. Prudential-Bache Trad Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003)).

Despite the Supreme Court's clear statement that the § 10 grounds for vacatur are exclusive and cannot be supplemented by contract or judicial creation, *id.* at 1404, the Court did not foreclose the essence of what appears to be Mr. Abbott's argument regarding manifest disregard of the law.  According to the Supreme Court, manifest disregard of the law can be read within the bounds of § 10, *id.* at 1404, as long as it refers to the § 10 grounds for vacatur.  But *Hall Street* makes one thing perfectly clear.  Manifest disregard of the law cannot expand district court review of arbitration awards to include review of an arbitration panel's alleged flawed

legal analysis unless there exists evidence that the arbitrators engaged in some form of egregious conduct proscribed by § 10, such as fraud or willful misconduct. *See id.* at 1404-05. Misinterpretation or misapplication of the law, by itself, is not enough. *See id.*

Although phrased in terms of manifest disregard of the law, Mr. Abbott's argument is that the panel violated § 10 of the FAA when it failed to correctly apply Utah's law concerning lost profits. He states that (1) Utah law concerning breach of contract damages is undeniable, (2) this law was presented to the arbitration panel, and (3) the majority's statement that it "decline[d] to compel either party to reduce the amount claimed by the amount of expenses that may have been saved," Def.'s Mem. in Supp. of Mot. to Affirm Arbitration Award and to Sever and Enter Final J. on the Award Ex. C. at 12, constitutes a misapplication of applicable Utah law. According to Mr. Abbott, this action amounted to misconduct by the majority panel as well as exceeding the powers granted them by the FAA. This argument fails.

The actions of the arbitrators in this case, even if they did incorrectly ascertain Utah damages law, are far from the grounds specified in § 10. Generally, only exceptional cases qualify for vacatur where arbitrators engage in improper application of the law. For example, the Eleventh Circuit overturned an award where a party acknowledged the existence of a law that, if applied, would have dictated a different result, but then urged the panel to ignore application of that law, which it did. *See Montes v. Shearson Lehman Brothers, Inc.*, 128 F.3d 1456, 1461 (11th Cir. 1997). That situation, however, involved a willful decision to refuse to apply controlling law, something the instant case lacks. In *Montes*, there was evidence that the panel recognized and understood the existence of settled law but then refused to apply it. *Id.* Here, the evidence shows only that the panel was presented with two opposing views of the law, one by Mr. Abbott and one by Mr. Mulligan, and that it adopted one of those two views. Based on this, at best, all Mr. Abbott has shown is that the majority panel misapplied or misinterpreted

Utah law. This provides no basis for a finding of misconduct under § 10 of the FAA. As Justice Souter recognized in *Hall Street*, § 10 only "address[es] egregious departures from the parties' agreed-upon arbitration." 128 S.Ct. at 1404. Egregious actions including fraud and willful misconduct are not equivalent with mistake of law. *Id.* at 1404-05. Indeed, "erroneous interpretations or applications of the law [by an arbitration panel] will not be disturbed." *ARW*, 45 F.3d at 1463.

Based on the facts in this case, the Court has no basis to vacate the panel's award, nor would it be appropriate to even engage in a thorough investigation as to whether the panel actually misapplied Utah law regarding damages.[2] If a misinterpretation or misapplication of the law was a sufficient basis upon which a district court could overturn an arbitration panel's ruling, district courts would become routine avenues for appeal every time a plausible argument could be made that the arbitration panel got the law wrong. An appeal to the district court would be virtually guaranteed if one of the parties felt they had grounds to argue that the arbitrators got the law *really* wrong. Such review would defeat the rationale and purposes behind the FAA. In situations such as this where sophisticated parties chose to use non-judicial resources to resolve their disputes, those parties, except in those rare cases involving evidence of willful misconduct, that is, where there is evidence that the arbitrators "exceeded their powers," per § 10, must be bound by that decision. Here, beyond Mr. Abbott's disagreement with the majority's ruling,

---

[2] The only reason to undertake such an exercise would be to determine whether this Court believes the arbitration panel correctly understood and applied Utah law. But even if at the end of a thorough, and no doubt time-consuming, effort to decide the question, this Court reached the conclusion that the panel got the law wrong, there would still be no evidence of willful misconduct. Even a determination by this Court that the arbitrators seriously missed the mark–in what it should be pointed out would still only be this Court's opinion–would not transform this case into the kind that qualifies under § 10. There would still need to be what is so clearly lacking here: evidence of fraud, corruption, or similar misconduct. Absent that kind of abuse of the system, the parties are not entitled to legal review by this or any other court, no matter how much they may feel the umpire got the law wrong. They still got what they bargained for: a resolution of their dispute by an arbitrator. To hold otherwise, as stated above, would undermine the primary virtues of arbitration while simultaneously turning district courts into the first layer of appellate review.

there is no evidence that the majority did anything other than its job, which included interpreting Utah law as it understood it to be.  This is not enough. The Court denies Mr. Abbott's Motion to Vacate.

## II.     Mr. Mulligan's Motion to Confirm the Arbitration Award and to Sever and Enter Final Judgment and Mr. Abbott's Motion for Protective Order.

Mr. Mulligan has asked the Court to confirm the arbitration award pursuant to 9 U.S.C. § 9 and to enter final judgment on the award.  In order to obtain final judgment, Mr. Mulligan asks the Court to sever the remaining claims between Mr. Abbott and Mr. Mulligan.

Section 9 of the FAA states that upon application to a court for an order confirming an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11."  9 U.S.C. § 9.  Mr. Abbott has only defended against this portion of Mr. Mulligan's motion based on his contention that the award should be vacated.  Because the Court has denied Mr. Abbott's request for vacatur, the Court must confirm the arbitration award.

Mr. Mulligan also requests that the Court enter final judgment on the arbitration award and sever the pending claims by Mr. Abbott against Mr. Mulligan.  Pursuant to the Federal Rules of Civil Procedure, the Court may sever claims against a party, Fed. R. Civ. P. 54(b), and may enter final judgment on less than all claims where "there is no just reason for delay."  Fed. R. Civ. P. 21.  In this case, however, the Court declines to enter final judgment or sever the pending claims.  Courts should generally be reluctant to enter judgment on less than all claims pending in a case before it.  *Oklahoma Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001).  The purpose of rule 54(b) is to provide recourse for parties where dismissal of less than all pending claims will result in undue hardship.  *Id.*  Mr. Mulligan has not made this showing.  Furthermore, Mr. Mulligan's arbitration award could be affected if the Court or a jury rules in

favor of Mr. Abbott on his remaining claims against Mr. Mulligan.  It would make little sense for the Court to force Mr. Abbott to pay money to Mr. Mulligan that may need to be repaid in the near future.  Accordingly, Mr. Mulligan's request to enter final judgment and sever the remaining claims is denied.  Without such an order, the need for discovery by Mr. Mulligan concerning collection of the arbitration award is premature.  The Court grants Mr. Abbott's motion for a protective order at this time.

### CONCLUSION

The FAA attempts to provide a cost effective, expeditious, and final resolution to all cases submitted to arbitration.  The law is clear that only in limited, egregious circumstances can courts meddle with awards made pursuant to the Act.  As Justice Souter stated in *Hall Street*, extreme, egregious arbitrable misconduct and legal error are distinctly different.  *See Hall Street*, 128 S.Ct. 1405.  Therefore, even where an arbitration panel clearly misinterprets or misapplies the law, without more, district courts should not act as appellate forums.  To do so would defeat the purposes of the arbitration system envisioned by the FAA.  Finality is one of the benefits, and risks, that parties assume when they agree to arbitrate.  Because Mr. Abbott has shown nothing more than what was possibly a misinterpretation of Utah law by the majority panel, the Court DENIES his Motion to Vacate.  The Court GRANTS Mr. Mulligan's Motion to Confirm Arbitration Award in part and confirms the award.  Otherwise, Mr. Mulligan's Motion is DENIED.  The Court GRANTS Mr. Abbott's Motion for Protective Order.

Dated this 13th day of August, 2009.

_____
Dee Benson
United States District Judge