IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| CHARLES F. ABBOTT, an individual,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>PATRICK J. MULLIGAN, an individual, and THE LAW OFFICE OF PATRICK J. MULLIGAN, P.C., a professional corporation,<br><br>    Defendants and Counterclaim Plaintiffs,<br><br>v.<br><br>CHARLES F. ABBOTT, P.C.,<br><br>    Additional Counterclaim Defendant. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:06-CV-593<br><br>Judge Dee Benson |

      This matter is before the court on plaintiff and counterclaim defendant Charles F. Abbot and counterclaim defendant Charles F. Abbot, P.C.'s motion to alter or amend or otherwise set aside the court's judgment confirming the arbitration award and for entry of judgment vacating the arbitration award. (*See* Dkt. No. 101.) On May 12, 2010, the court held a hearing on the motion. At the hearing, plaintiff and counterclaim defendants (collectively "Abbott") were represented by Jonathan O. Hafen and Gregory M. Hess. The defendants and counterclaim plaintiffs Patrick J. Mulligan and the Law Office of Patrick J. Mulligan (collectively "Mulligan") were represented by Erik A. Christiansen, Jeffrey M. Tillotson, and John Volney. After taking the matter under advisement, the court has further considered the law and facts relating to the motion. Being fully advised, the court renders the following Memorandum Opinion and Order.

BACKGROUND

This case centers on a written agreement dated April 30, 2002 (the "Agreement"), between Abbot, a Utah lawyer, on the one hand, and Mulligan, a Texas lawyer, on the other. By that agreement, Abbott and Mulligan agreed to jointly solicit, test, and, in appropriate cases, represent those injured by Fen-Phen. Abbott agreed to place advertisements in California and Utah seeking individuals potentially harmed by Fen-Phen use, to screen potential clients for compensable injuries, and then to refer qualifying claimants to Mulligan. In exchange for these actions, Mulligan agreed to pay for advertising and screening costs related to those clients. He also agreed to pay Abbott a portion of any recovered attorneys' fees following recovery by a client. Abbott and Mulligan chose to incorporate an arbitration provision and a Utah choice of law provision in the Agreement.

On July 18, 2006, Abbott filed a complaint against Mulligan in this court, complaining in part that Mulligan had breached the Agreement by failing to pay him his portion of recovered attorneys' fees. Mulligan admitted he owed Abbott for recovered fees, but he disputed the amount claimed by Abbott. Mulligan counterclaimed against Abbott alleging that the Agreement was exclusive and that Abbott had violated the Agreement by retaining clients for himself and referring clients to another attorney. In response, Abbott claimed that the Agreement was not exclusive. After nearly one year of litigation, Abbott asked the court to compel arbitration pursuant to the arbitration provision in the Agreement. The court granted this request on August 8, 2007. The parties then tried the issues surrounding the Agreement to a panel of three American Arbitration Association ("AAA") arbitrators.

Between June 23 and June 27, 2008, the arbitration panel conducted evidentiary hearings in Salt Lake City, Utah. On October 1, 2008, a majority of the three-person panel issued a written opinion finding largely in favor of Mulligan. The panel majority found that the

Agreement was exclusive, i.e., it required Abbott to jointly represent with Mulligan all California and Utah Fen-Phen clients generated by Abbott after February 12, 2001. On that basis, the majority awarded Mulligan nearly $7 million in damages. In addition, the panel majority found that Mulligan had improperly withheld payment to Abbott of slightly more than $1 million in recovered attorneys' fees and expenses. The arbitration award was entered January 9, 2009.

On January 16, 2009, Abbott filed a motion in this court seeking complete vacatur of the majority panel's decision. Specifically, Abbot claimed that the majority panel exceeded its powers by "(1) manifestly disregarding the applicable Utah law that requires a party to prove its lost net profits—not just lost gross profits—as damages, and/or (2) entering an award that was completely irrational." (Dkt. No. 51, Pl.'s Mem. in Supp. of Mot. to Vacate Arbitration Award 15, filed Jan. 16, 2009) Mulligan also filed a motion asking the court to confirm the arbitration award pursuant to 9 U.S.C. § 9.[1] On August 13, 2009, after extensive briefing and a hearing on the parties' competing motions, the court denied Abbott's request for vacatur and granted Mulligan's motion confirming the arbitration award. At no time in any of his briefing or at the hearing did Abbott raise any public policy arguments. On December 10, 2009, the court entered a final judgment in this case.

On January 7, 2010, Abbott moved the court to vacate or amend the court's judgment and the arbitration award against him. According to Abbott, as construed by the panel, the Agreement is void as against public policy for two primary reasons. First, the Agreement is void because it violates the rules of professional conduct against exclusive referral agreements and interferes with Abbott's exercise of independent professional judgment. Second, the Agreement is void because it violates the rules of professional conduct against restricting an attorney's

---

[1]Section 9 of the Federal Arbitration Act states that upon application to a court for an order confirming an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11." 9 U.S.C. § 9.

ability to practice law and a client's right to chose an attorney with the benefit of full disclosure. Abbott asserts that this court should grant his motion to vacate according to the standards of reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure.

DISCUSSION

The court finds no bases to alter or set aside its final judgment or vacate the arbitration award because (1) Abbott waived his public policy arguments and (2) even if they were timely, the Agreement and the arbitration award do not violate well defined and dominant public policies.

**1.      Waiver**

The court finds Abbott waived his public policy arguments because they are untimely. A motion under Rule 59(e) is warranted when: (1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was previously unavailable; or (3) it is necessary to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Thus, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* In addition, the Federal Arbitration Act requires notice of a motion to vacate, modify, or correct an arbitration award to "be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. A motion to vacate an arbitration award after the three months prescribed is not permitted, even to assert additional claims. *See Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158 (10th Cir. 2007) (holding a party who fails to comply with the statutory precondition of timely service of notice of motion to vacate or modify award forfeits the right to judicial review of the award); *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*

*v. Celotex Corp.*, 708 F.2d 488, 490 (9th Cir. 1983) ("An unsuccessful party at arbitration who did not move to vacate the award within the prescribed time may not subsequently raise, as affirmative defenses in a suit to enforce the award, contentions that it could have raised in a timely petition to vacate the award.").

In this case, there has been no intervening change in the law. There is no newly discovered evidence which was previously unavailable. And, there is no need to correct clear error or prevent manifest injustice to Abbott. It is inescapable that Abbott's public policy arguments should have and could have been raised in Abbott's original motion to vacate the arbitration award filed on January 16, 2009. Abbott has not provided, nor has the court found, a single case where a state or federal court has set aside an arbitration award at the Rule 59(e) stage when the party challenging the award could have, but failed to, include the specific grounds in its original motion to vacate. Moreover, under 9 U.S.C. § 12, Abbott forfeited a subsequent judicial review of the arbitration award because he did not move to vacate the award on public policy grounds within three months after the award was filed or delivered. The arbitration award was entered January 9, 2009. Abbott did not claim that the award should be vacated on public policy grounds until January 7, 2010. The court denies Abbott's Rule 59(e) motion because Abbott waived his arguments by failing to include them in his original motion to vacate.

## 2. Public Policy Exception

Even if Abbott's public policy arguments were timely, the court finds that they are unavailing. Mindful of the strong federal policy favoring arbitration, a court may grant a motion to vacate an arbitration award only for the reasons enumerated in the Federal Arbitration Act, 9 U.S.C. § 10, or for a handful of judicially-created reasons. *DMA Int'l, Inc. v. Qwest Commc'ns Int'l, Inc.*, 585 F.3d 1341, 1344 (10th Cir. 2009). The court acknowledges that one of the judicially-created reasons is a public policy exception. *See Legacy Trading Co., Ltd. v. Hoffman*,

Nos. 09-6007, 09-6018, 2010 WL 325893, at *3 (10th Cir. Jan. 29, 2010); *DMA Int'l*, 585 F.3d at 1344; *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1150 (10th Cir. 2007); *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001). The public policy exception to enforcing arbitration awards is rooted in the common law that a court may refuse to enforce contracts that violate law or public policy. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987); *see also Lewis*, 500 F.3d at 1151. The Supreme Court of the United States has cautioned "that a court's refusal to enforce an arbitrator's interpretation of such contracts is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Misco*, 484 U.S. at 43 (internal quotation marks and citation omitted). Likewise, the United States Court of Appeals for the Tenth Circuit has emphasized the narrow application of the public policy exception by admonishing that "an arbitration award is not to be lightly overturned." *Lewis*, 500 F.3d at 1151 (citation omitted); *see also Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1146–47 (10th Cir. 1982) ("Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances.").

Here, Abbott contends that the arbitration award against him is void because the Agreement violates Rule 7.2 (Advertising) of the American Bar Association's Model Rules of Professional Conduct and Rules 1.5 (Fees), 1.7 (Conflicts of Interest: Current Clients), 2.1 (Advisor), and 5.6 (Restrictions on Right to Practice) of Utah's Rules of Professional Conduct. According to Abbott, these violations provide valid bases for vacating the arbitration award because the Utah Rules of Professional Responsibility embody public policy and the ABA Model Rules set a "national standard" to be applied in matters of professional ethics.

There is no doubt that the rules of professional conduct are important. Nevertheless, they do not rise to the level of well defined and dominant public policy in this case. The ABA Model Rules and Utah's Rules of Professional Conduct provide:

> The Rules of Professional Conduct are rules of reason. . . . The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.

*See* ABA Model Rules of Professional Conduct, *Preamble: A Lawyer's Responsibilities* ¶¶ 14, 20; Utah Rules of Professional Conduct, *Preamble: A Lawyer's Responsibilities* ¶¶ 14, 20. The essence of this case consists of two attorneys fighting over money, not disciplinary matters or clients' rights. Under these circumstances, even if the rules were violated, they do not provide sufficient public policy reasons to vacate the Agreement and/or the arbitration award against Abbott. Accordingly, the court finds that Abbott has failed to demonstrate a valid basis for vacating the award.

## CONCLUSION

For the reasons stated above, Abbott's motion to alter or amend or otherwise set aside the court's judgment confirming the arbitration award and for entry of judgment vacating the arbitration award is DENIED.

IT IS SO ORDERED.

DATED this 4th day of June, 2010.

Dee Benson
United States District Judge